**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

GERVAIS (KEN) NGOMBWA,

        Defendant.

No. 14-CR-123-LRR

**ORDER**

---

### *TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

II.    **RELEVANT PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   **RELEVANT FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . **4**

IV.   **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

     A.    *Alleged Participation in Rwanda Genocide* . . . . . . . . . . . . . . . . . . **6**
     B.    *Other Acts Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
          1.    *Rule 404(b)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
          2.    *Rule 608(b)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
          3.    *Testimony of insurance company employee* . . . . . . . . . . . **17**
     C.    *Testimony of Ms. Mukakabanda* . . . . . . . . . . . . . . . . . . . . . . . **17**
     D.    *A-Files* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
     E.    *Self-Serving Statements* . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**
     F.    *Expert Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
     G.    *Authentication of Foreign Military Records* . . . . . . . . . . . . . . . **24**
     H.    *Reliability of Interpreters* . . . . . . . . . . . . . . . . . . . . . . . . . . **25**
     I.    *Potential Punishment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **26**
     J.    *Sympathy and Jury Nullification* . . . . . . . . . . . . . . . . . . . . . . **27**
     K.    *Justification Defenses* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **28**

V.    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **28**

### *I.  INTRODUCTION*

The matters before the court are Defendant Gervais (Ken) Ngombwa's "Motion in Limine" ("Defense Motion") (docket no. 54), "Second Motion in Limine" ("Defense

Motion II") (docket no. 57), "Third Motion in Limine" ("Defense Motion III") (docket no. 93) and "Motion for Preliminary Ruling Regarding Admissibility of Testimony of Antoinette Mukakabanda" ("Motion for Preliminary Ruling") (docket no. 65), and the government's "Motion in Limine" ("Government Motion") (docket no. 62).

## II. RELEVANT PROCEDURAL HISTORY

On October 30, 2014, the grand jury returned a four-count Indictment (docket no. 2) charging Defendant with unlawfully procuring or attempting to procure naturalization or citizenship in violation of 18 U.S.C. § 1425(a) (Count 1); procuring or attempting to procure citizenship to which a person is not entitled in violation of 18 U.S.C. § 1425(b) (Count 2); conspiracy to unlawfully procure or attempt to procure citizenship in violation of 18 U.S.C. §§ 371, 1425(a) (Count 3); and making a materially false statement in violation of 18 U.S.C. § 1001(a)(2) (Count 4). Extending from Counts 1 and 2, the government also seeks to revoke Defendant's citizenship pursuant to 8 U.S.C. § 1451(e). *See* Indictment ¶ 66. On March 19, 2015, the parties filed a Joint Motion to Strike (docket no. 36), which requested that the court strike certain language and allegations included in the Indictment. The Joint Motion to Strike was meant to "remove[] allegations concerning genocide, genocide proper, [and] items that are defined as genocide" from the Indictment. *See* "Transcript from March 20, 2015 Scheduling Conference" ("March 20, 2015 Transcript") (docket no. 40). On June 1, 2015, the parties moved to amend the Joint Motion to Strike, to correct certain mistakes made in the initial motion. "Joint Motion to Amend Motion to Strike and to Enter or Amend Court Order *Nunc Pro Tunc*" ("Joint Motion to Amend") (docket no. 42). On June 1, 2015, the court granted the Joint Motion to Strike, as amended by the Joint Motion to Amend. *See* June 1, 2015 Order (docket no. 43).

Defendant has pleaded not guilty to each charge included in the Indictment and a jury trial is scheduled to commence on January 11, 2016. *See* Amended Trial Scheduling

Order (docket no. 107). On November 19, 2015, Defendant filed the Defense Motion (docket no. 54). On November 25, 2015, Defendant filed the Defense Motion II (docket no. 57). On December 4, 2015, the government filed a "Response to Defendant's Motions in Limine" ("Government Response") (docket no. 61). On December 4, 2015, the government filed the Government Motion (docket no. 62). On December 10, 2015, Defendant filed a "Reply to the Government's Response" ("Defense Reply") (docket no. 63). On December 10, 2015, Defendant filed a "Response to Government's Motion in Limine" ("Defense Response") (docket no. 64). On December 10, 2015, Defendant filed the Motion for Preliminary Ruling (docket no. 65). On December 21, 2015, the court held a hearing on the Motion for Preliminary Ruling. *See* Dec. 21, 2015 Minute Entry (docket no. 72). At the hearing, the parties discussed both the Motion for Preliminary Ruling and their motions in limine. *See id.* On December 23, 2015, Defendant filed a "Supplemental Brief Supporting His Motion in Limine" ("Defense Supplemental Brief") (docket no. 73). On December 23, 2015, Defendant filed a "Supplement to Response to Government's Motion in Limine and Offer of Proof" ("Defense Supplemental Response") (docket no. 74). On December 24, 2015, Defendant filed a "Second Supplemental Brief Supporting His Motion in Limine" ("Defense Supplemental Brief II") (docket no. 75). On December 31, 2015, the government filed a "Response to Defendant's Supplemental Briefs Supporting Defendant's Motions in Limine" ("Government Response II") (docket no. 79). On January 4, 2016, Defendant filed a "Response to Government's Response" ("Defense Response II") (docket no. 80). On January 5, 2016, Defendant filed the Defense Motion III (docket no. 93). On January 6, 2016, the court held a final pretrial conference with the parties, and again the parties discussed all the motions in limine, the motions for preliminary ruling and related filings. *See* Jan. 6, 2016 Minute Entry (docket no. 94). The matter is fully submitted and ready for decision.

## III. RELEVANT FACTUAL BACKGROUND[1]

Defendant was born in Rwanda. Two primary ethnic groups reside in Rwanda: Hutus (comprising the majority) and Tutsis (comprising the minority). In 1994, after a lengthy period of ethnic tension between the groups, Hutu extremists came into power within the Rwandan government and engaged in mass genocide throughout the country, killing with impunity Tutsi civilians and moderate Hutus who sympathized with, protected or otherwise aligned with Tutsis. Hundreds of thousands of Rwandans were killed during the genocide.

Defendant is a Hutu and his wife, Antoinette Mukakabanda, is a Tutsi. Prior to the genocide, Defendant and his wife lived together in Rwanda with several children—some of whom were Defendant's and some of whom were not. During the genocide, Defendant fled Rwanda with his wife and the children to the Mkugwa Refugee Camp in Tanzania. At Mkugwa, Defendant applied for refugee status to gain entry to the United States for himself, his wife and the children. The application process involved a series of interviews with Defendant, which were conducted by various humanitarian and immigration entities who communicated through local interpreters. In 1998, after completion of the application process, Defendant, his wife and the children were approved for refugee status in the United States. In 2004, after approximately six years in the United States, and after an additional application process, Defendant was naturalized as a citizen of the United States.

The various counts in the Indictment allege that Defendant made false statements to unlawfully procure refugee status and naturalization.

## IV. ANALYSIS

In the Defense Motion, Defendant requests pretrial rulings excluding the following evidence: (1) that Defendant participated in any way in the 1994 Rwandan genocide; (2)

---

[1] This factual background is alleged as "Background" in the Indictment. *See* Indicment ¶¶ 1-58.

other acts evidence of Defendant's alleged arson and insurance fraud; and (3) any testimony from Defendant's wife, Antoinette Mukakabanda.

In the Defense Motion II, Defendant requests that three portions of the Indictment not be read to the jury. The language identified in the Defense Motion II refers to Defendant's alleged participation in the genocide but was not previously addressed in the Joint Motion to Strike.

In the Defense Motion III, Defendant requests that anticipated testimony by an insurance company employee testifying as a government witness be excluded.

In the Government Motion, the government requests the following pretrial evidentiary rulings: (1) finding admissible evidence from Defendant's "A-Files"; (2) excluding evidence offered by Defendant regarding self-serving hearsay statements made by Defendant; (3) finding admissible expert testimony about Rwandan history and culture; (4) finding foreign records relating to Defendant's brother's military status to be self-authenticating; (5) finding that Defendant lacks standing to assert the spousal privilege to prevent Ms. Mukakabanda from testifying; (6) excluding evidence offered by Defendant that interpreters at the refugee camps were generally unreliable; (7) excluding references to any punishment resulting from Defendant's potential conviction for the instant charges; (8) excluding evidence offered by Defendant intended to garner sympathy; and (9) excluding evidence or argument by Defendant that he acted due to duress, coercion, necessity or justification.

In the Motion for Preliminary Ruling, Defendant expounds on the issue of the potential testimony of Ms. Mukakabanda. Defendant moves the court to explain to Ms. Mukakabanda that she has the right to assert spousal privilege and refuse to testify, to ensure that any purported waiver of the privilege is made knowingly and voluntarily.

The court will address each issue in turn.

## A. Alleged Participation in Rwanda Genocide

Defendant argues that the court should exclude from trial any evidence or argument that Defendant was "a leader or participant in the 1994 genocide, or participat[ed] in any acts of violence during that period." "Memorandum in Support of Defendant's Motion in Limine" ("Defense Brief") (docket no. 54-1) at 4. Defendant seeks exclusion of this evidence from the government's case-in-chief, as well as from cross-examination of Defendant if he chooses to testify. *Id.* As grounds for exclusion, Defendant argues that Defendant and the government reached a pre-trial agreement wherein the government would base its case solely on alleged misrepresentations made by Defendant that were unrelated to the genocide. *Id.* at 1-5. The parties filed the Joint Motion to Strike in furtherance of their agreement, although Defendant maintains that certain references to genocide remain in the Indictment. *Id.* at 2. In the Defense Motion II, Defendant argues that the references to genocide remaining in the Indictment should not be read to the jury at trial. Defense Motion II at 1.

In the Government Response, the government acknowledges the agreement and affirms that it will not offer evidence of Defendant's alleged involvement in genocide or acts of violence in Rwanda as part of its case-in-chief. Government Response at 1. However, it holds open the possibility that "evidence or inquiry into such matters could become relevant in rebuttal or on cross[-]examination of [D]efendant" as being "relevant to his motive to lie to gain refugee status." *Id.* The government further states that it has no objection to striking the remaining references to genocide from the Indictment. Two of the genocide-related paragraphs listed in the Defense Motion II—numbers 30 and 43—appear in the background section of the Indictment and will not be read to the jury pursuant to the court's oral order at the January 6, 2016 final pretrial conference, which prohibited the government from reading to the jury the background paragraphs, references to the background paragraphs and the revocation of citizenship allegation included within

the Indictment.  *See* January 6, 2016 Minute Entry (docket no. 94).  As to the language appearing at paragraph 62(j)(1), however, the Defense Motion II shall be granted.

Defendant disputes the government's implication that the mere act of testifying opens the door to evidence of Defendant's alleged participation in genocide on cross-examination.  Defense Reply at 1.  Defendant implies that the parties' pre-trial agreement prohibits that course of action.  *See id.* at 1-2.  However, the agreement was never memorialized in writing, despite the court advising the parties to do so.  March 20, 2015 Transcript (docket no. 40) at 10.  Thus, as evidenced by the parties' present dispute in their motions in limine, the only portion of the "agreement" on which the parties continue to agree is that the government will not introduce any evidence or make any reference to Defendant's alleged participation in genocide or other acts of violence committed during his time in Rwanda in its case-in-chief.[2]  The court will enforce this agreement to prohibit the government from pursuing such evidence or argument in its case-in-chief.  Accordingly, the Defense Motion shall be granted to the extent it seeks to exclude evidence or allegations that Defendant participated in genocide during the government's case-in-chief.

Because no written agreement between the parties exists and the parties do not agree as to whether there was an agreement regarding the use of genocide-related evidence to impeach Defendant should he elect to testify, the court has nothing on which to base a ruling to exclude such evidence at this stage in the proceedings.  As the court indicated at the final pretrial conference, it is premature to rule on the scope of the cross-examination until the testimony on direct examination develops.  However, the parties have extensively honed in on and briefed the issue of the government's anticipated impeachment of

---

[2] When the dispute regarding the extent of the parties' agreement was brought to the court's attention at the motion hearing on December 21, 2015, the court inquired as to whether the dispute warranted a continuance of trial.  Neither party has since requested a continuance.

Defendant with evidence that Defendant was convicted in absentia in the Rwandan gacaca courts for genocide and faces further prosecution for genocide if he returns to Rwanda. The government argues that this evidence is probative of Defendant's motive to lie because, if Defendant were convicted for the instant offenses, he would potentially be returned to Rwanda to face punishment for the conviction in the gacaca court and the pending charges against him. *See* Government Response II at 5. Defendant frames the government's offered justification for the evidence as a flawed application of Rule 608(b) and argues that the evidence is not admissible under that provision and, further, that it should be excluded under Rule 403. Defense Response II at 3-5.

Admissibility of the impeachment evidence at issue is not precluded by Rule 608(b), as suggested by Defendant. That provision permits inquiry into specific acts of a witness "if they are probative of the character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). Here, the government does not seek to inquire as to specific acts, it seeks to inquire as to Defendant's legal status in Rwanda—notwithstanding the factual basis for that status. Further, the government does not propose to pursue its line of questioning as a means of establishing Defendant's *character* for untruthfulness, but instead to establish that Defendant has a motive to lie, or bias. Impeaching a witness for bias is not formally governed by the Federal Rules of Evidence but "is fully permitted under the common law of evidence." *United States v. Allen*, 540 F.3d 821, 824 (8th Cir. 2008). Under the Federal Rules of Evidence, impeachment for bias links most directly to Rule 402's broad admissibility of relevant evidence, because "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness'[s] tesimony." *Id.* (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)). Therefore, the government's impeachment of Defendant as to his motive to lie is admissible as relevant

evidence, barring its exclusion on other grounds. *See* Fed. R. Evid. 402 (making admissible any relevant evidence unless otherwise provided).

Defendant makes a strong argument as to the unfair prejudice created by mentioning genocide convictions or charges, or convictions in a gacaca court (which implies convictions for genocide). Even compared to other severe crimes, genocide is distinctly evocative of brutality and extreme violence. For this reason, at the final pretrial conference the government stated that it would phrase its impeachment inquiry so as to avoid such prejudice by referring to Defendant's outstanding criminal matters in Rwanda as "outstanding charges" or "proceedings," avoiding use of the terms "gacaca" or "genocide." Given the relevance of Defendant's motive to lie, as noted above, and the agreed-upon measures taken by the government to reduce the dangers of prejudice in the impeachment inquiry, the court finds that the danger of unfair prejudice does not substantially outweigh the probative value of the evidence under Rule 403. Accordingly, the court shall deny the Defense Motion to the extent it seeks to exclude impeachment evidence of potential "outstanding charges" or "proceedings" that Defendant would face if returned to Rwanda.

### B. Other Acts Evidence

Defendant argues that the court should exclude evidence relating to Defendant's alleged acts of arson and insurance fraud, for which Defendant faces currently pending charges in state court. Defense Motion at 2. Defendant seeks exclusion on the grounds that evidence of the acts "would be unfairly prejudicial" under Federal Rule of Evidence 403 and because the evidence would be "offered to show [Defendant's] conformity with bad character" in violation of Rule 404(b). *Id.* The government argues that evidence of the alleged arson and insurance fraud is admissible under Rule 404(b) because it is probative of Defendant's "intent, motive, absence of mistake, and lack of accident in filing document[s] in the course of seeking admission into, and ultimate citizenship in, the United

States." Government Response at 2. The government further argues that, beyond Rule 404(b), the evidence is admissible to impeach Defendant under Rule 608(b)[3] if he chooses to testify. *Id.* at 3.

### 1. *Rule 404(b)*

Evidence of a "crime, wrong, or other act" engaged in by a defendant is inadmissible to show that the defendant has a propensity for wrongful conduct. *See* Fed. R. Evid. 404(b)(1). Despite this general prohibition, a defendant's bad acts are admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Rule 404(b) is a rule of inclusion that prohibits the admission of evidence only when it is offered solely to prove a defendant's criminal propensity." *United States v. Molina*, 172 F.3d 1048, 1054 (8th Cir. 1999). Evidence of a defendant's bad acts is admissible under Rule 404(b) if it is "(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance of the evidence; and (4) if the potential prejudice does not substantially outweigh its probative value." *United States v. Battle*, 774 F.3d 504, 513 (8th Cir. 2014) (quoting *United States v. Thomas*, 389 F.3d 1058, 1062 (8th Cir. 2005)). "Rule 404(b) applies to evidence of subsequent as well as prior crimes, wrongs, or acts." *United States v. DeAngelo*, 13 F.3d 1228, 1231 (8th Cir. 1994).

---

[3] In the Government Response, the government cites to Rule 609(b). Government Response at 3. Rule 609(b) places limitations on the admissibility of criminal convictions that are more than ten years old. Fed. R. Evid. 609(b). However, based on context, wherein the government describes its intention to inquire about the alleged acts of arson and insurance fraud "on cross-examination if [D]efendant testifies or presents other character evidence," the court understands the government to base its argument on Rule 608(b). *See* Fed. R. Evid. 608(b) (regarding the admissibility of inquiry into specific instances of conduct "probative of the character for truthfulness or untruthfulness" of the witness).

The government claims that evidence of the other acts is probative of Defendant's "intent, motive, absence of mistake, and lack of accident in filing document[s] in the course of seeking admission into, and ultimate citizenship in, the United States." Government Response at 2. The court questions whether the acts of arson and insurance fraud are in fact probative of Defendant's motive, given that the Indictment plainly alleges that Defendant engaged in the alleged conduct with the motive of gaining access to the United States. *See, e.g.*, Indictment ¶ 61 (alleging actions taken by Defendant "to procure naturalization"). The court fails to see how evidence that Defendant committed arson and submitted a fraudulent insurance claim is relevant to that motive. However, the court does agree that evidence that Defendant provided false information in an insurance claim is probative of Defendant's intent, absence of mistake and lack of accident in allegedly providing false information while seeking admission into and citizenship in the United States, insofar as proof that he intentionally made false statements in the context of an insurance claim would tend to show that he previously made false statements during the refugee application process with the requisite intent, and without mistake or accident. Therefore, the court concludes that Defendant's alleged act of insurance fraud is relevant to a material issue. The court finds that the alleged arson bears no such relevance to Defendant's intent, motive, absence of mistake or lack of accident for the offenses charged.

For a prior act to be sufficiently similar, it "need not be [a] duplicate[], but must be sufficiently similar to support an inference of criminal intent." *United States v. Strong*, 415 F.3d 902, 905 (8th Cir. 2005). Other acts evidence supports an inference of criminal intent if it is "similar in pattern" to the offense charged. *See United States v. Dugan*, 150 F.3d 865, 867 (8th Cir. 1998). A similar pattern may exist when a defendant "demonstrates the same method of deception" in the offense charged as he demonstrated in the other act. *United States v. Edelmann*, 458 F.3d 791, 810 (8th Cir. 2006). For

example, other acts are similar in pattern where: the other act and the offense charged both involve the use of other people's identities for financial gain, *United States v. Clark*, 668 F.3d 568, 575 (8th Cir. 2012), the other act and the offense charged both involve specialized knowledge of a particular industry, *United States v. Yielding*, 657 F.3d 688, 701 (8th Cir. 2011), or the other act and the offense charged both involve the same specific conduct—such as the arrangement of sham marriages, *United States v. Anwar*, 428 F.3d 1102, 1110 (8th Cir. 2005). As these examples make clear, a meaningful similarity must exist between the other act and the offense charged, beyond the mere nominal or superficial. Here, the court finds no similar pattern between the alleged act of insurance fraud and the offenses charged. They involved different goals (an insurance payout versus access to the United States), different alleged misrepresentations (details of a house fire versus biographical information) and different modes of communication (a written insurance claim versus verbal interviews memorialized on government forms, *see* Indictment ¶¶ 20-24 (describing how the forms comprising the refugee application were completed via interviews with officials from the United Nations High Commissioner for Refugees)), among other differences. Because the alleged insurance fraud is not sufficiently similar to the offense charged, evidence of that act is excludable on this basis alone. However, the court will proceed to address the remaining requirements for admissibility under Rule 404(b).

As to the question of remoteness, "'[t]here is no absolute rule regarding the number of years that can separate [conduct]' admitted under Rule 404(b)." *United States v. Thomas*, 593 F.3d 752, 758 (8th Cir. 2010) (quoting *Edelmann*, 458 F.3d at 810). The similarity and remoteness inquiries are related, such that a greater time lapse between the other act and the alleged offense will be tolerated when the other act is highly similar, while a lesser time lapse will be tolerated when the other act is less similar. *Cf. id.* ("Where the extrinsic act is extremely similar to the crime at issue, evidence of the act will

usually be rendered irrelevant only by 'an enormous lapse of time.'" (quoting *United States v. Anifowoshe*, 307 F.3d 643, 647 (7th Cir. 2002))).

A timeline of relevant events aids the court in its analysis of whether the other act evidence of Defendant's insurance fraud is close in time to the offenses charged. The alleged insurance fraud occurred in July 2013. *See* Government Response at 2. As to the charged offenses, the government alleges the following:

- In 1998, Defendant made a series of false statements to various entities while pursuing refugee status at the Mkugwa refugee camp and he, on various occasions, attested to the truthfulness of those statements. Indictment ¶¶ 33-47.
- In 2000, Defendant submitted an "Application to Register Permanent Resident or Adjust Status" in which he made various false representations "under penalty of perjury." *Id.* ¶ 54.
- In 2003, Defendant submitted an "Application for Naturalization" in which he made various false representations "under penalty of perjury." *Id.* ¶ 56.
- In 2004, in an interview with an immigration officer, Defendant reaffirmed the false information listed in the prior applications. *Id.* ¶ 57.
- In 2014, in an interview with another immigration officer, Defendant falsely denied that he had made certain misrepresentations when seeking refugee status in the United States. *Id.* ¶ 72

Although the alleged act of insurance fraud occurred between nine and fifteen years subsequent to much of the conduct alleged by the government, it occurred only one year prior to the 2014 conduct, which forms the basis for Count 4 of the Indictment. The one-year period separating the alleged act of insurance fraud and the offense charged in Count 4 is sufficiently close in time to satisfy the temporal requirement of Rule 404(b). *See United States v. Thomas*, 791 F.3d 889, 894 (8th Cir. 2015) (stating that "[a] one-year period between schemes satisfies th[e] reasonableness standard" for remoteness of time).

If the court had not concluded that the other acts evidence was excludable under Rule 404(b) for reasons of its dissimilarity, the court would find the evidence sufficiently close in time.

Assuming, without deciding, that the other act evidence can be proven by a preponderance of the evidence,[4] the last prong of the Rule 404(b) analysis requires a balance of the probative value of the evidence against its prejudicial effect. This requirement is equivalent to the balancing test required under Rule 403. *See United States v. Battle*, 774 F.3d 504, 513 (8th Cir. 2014). In conducting this balancing, the court observes that the alleged false statements included in Defendant's insurance claim included that "he was alone in the house at the time of the fire and had no idea how the fire started." Government Response at 2. To introduce evidence of Defendant's insurance fraud under Rule 404(b), the government will have to show that the statements in the insurance claim were, in fact, false. Doing so will necessarily require evidence of Defendant's involvement in the arson, an act by Defendant which bears no relevance to a material issue in this case. In other words, in pursuit of proving its case for the offenses charged, the government will seek to prove not only that Defendant submitted a fraudulent insurance claim but, also, that Defendant committed arson—thus, making his statements in the insurance claim untrue. This amounts to a "trial within a trial" over collateral issues, which poses a substantial danger of confusing the issues. *See* Fed. R. Evid. 403 (permitting exclusion of evidence where its "probative value is substantially outweighed by a danger of . . . confusing the issues"); *see also, e.g.*, *Chism v. CNH Am. LLC*, 638 F.3d 637, 642 (8th Cir. 2011) ("The district court . . . may consider and choose to avoid

---

[4] The parties' materials do not provide factual detail to support a finding of proof by preponderance of the evidence. Given that Defendant faces charges in state court arising from the conduct at issue, it is apparent that there is *some* proof to support the evidence. However, the court declines to speculate as to the strength of that proof, and, therefore, cannot conclude that it rises to a preponderance of the evidence.

a trial within a trial for . . . previous incident[s].").  Therefore, the court concludes that evidence of Defendant's insurance fraud must be excluded under Rule 403 because its probative value is substantially outweighed by a danger of confusing the issues.

In conclusion, because evidence of Defendant's alleged act of arson has no relevance to a material issue in this case, it is excluded under Rule 404(b).  Further, because evidence of Defendant's alleged insurance fraud is not sufficiently similar to the offenses charged and proof of the act will generate a trial within a trial, it is excluded under both Rule 404(b) and Rule 403.  Accordingly, the court shall grant the Defense Motion to the extent it seeks to exclude evidence of Defendant's alleged acts of arson and insurance fraud under Rule 404(b) and Rule 403.

## 2.    *Rule 608(b)*

Rule 608(b) provides that, "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b).  Despite barring extrinsic evidence of specific conduct except for certain criminal convictions, Rule 608(b) allows for inquiry into specific conduct on cross-examination of a witness "if [it is] probative of the character for truthfulness or untruthfulness" of the witness testifying.  Fed. R. Evid. 608(b)(1).  "In inquiring about the witness's conduct [under Rule 608(b)], the questioner must take the answer provided by the witness and cannot use 'extrinsic evidence to prove that the specific bad acts occurred.'" *United States v. Grandison*, 781 F.3d 987, 992 (8th Cir. 2015) (quoting *United States v. Martz*, 964 F.2d 787, 789 (8th Cir. 1992)).

The government argues that "[D]efendant's attempts to commit insurance fraud would be probative of his character for truthfulness" and open to inquiry on cross-examination in the event Defendant testifies.  Government Response at 3.  Defendant contends that, although the court may "permit a party to inquire" about specific acts

bearing on a witness's truthfulness, the court may likewise exclude otherwise admissible evidence under Rule 403, and urges the court to do so here. Defense Reply at 3.

As an initial matter, the court agrees with Defendant's formulation of the interplay between Rule 608(b) and Rule 403. Both rules grant the court discretion as to their application. *See* Fed. R. Evid. 403 ("The court *may* exclude . . . ." (emphasis added)); Fed. R. Evid. 608(b) ("[T]he court *may*, on cross-examination, allow them to be inquired into . . . ." (emphasis added)). Such overlapping discretion permits the court to exclude evidence admissible under Rule 608(b) pursuant to Rule 403 balancing. *See United States v. Beal*, 430 F.3d 950, 956 (8th Cir. 2005); *accord. United States v. Atwell*, 766 F.2d 416, 420 (10th Cir. 1985). Therefore, the court will proceed to determine whether the acts at issue comport with Rule 608(b) and, if so, shall determine whether the probative value of the evidence is substantially outweighed by the dangers listed in Rule 403.

Rule 608(b) only permits inquiry into specific acts bearing on the witness's character for truthfulness. While making false statements on an insurance claim is undoubtedly probative of Defendant's character for truthfulness, arson is not. *See United States v. Cudlitz*, 72 F.3d 992, 996 (1st Cir. 1996) ("[S]oliciting arson, although showing bad character generally, is not 'probative of . . . untruthfulness.'" (quoting Fed. R. Evid. 608(b)). Therefore, inquiry into Defendant's alleged act of arson is not admissible under Rule 608(b).

As for Rule 403 balancing, the analysis here is equivalent to that which the court engaged in above. Evidence of Defendant's alleged insurance fraud is inextricable from evidence of Defendant's alleged arson. To inquire into the fraud requires inquiry into the falsity of the insurance claim, which, in turn, implicates Defendant in setting fire to his home. Like in the court's Rule 404(b) discussion, inquiry into these matters under Rule 608(b) poses the same risk of devolving into a "mini-trial" on "peripherally related" matters. *See United States v. Olsson*, 713 F.3d 441, 447 (8th Cir. 2013) ("Rule 608 . . .

allows the district court to avoid 'mini-trials on peripherally related or irrelevant matters' . . . ." (quoting *United States v. Alston*, 626 F.3d 397, 403-04 (8th Cir. 2010))), *vacated on other grounds*, 134 S. Ct. 530 (2013), *remanded*, 742 F.3d 855, 856 (2014) (reinstating portion of earlier opinion related to cross-examination of witnesses). The fact that no extrinsic evidence is permitted to support Rule 608(b) evidence does not change the analysis. The potential remains for the parties to engage in a back-and-forth of impeachment and rehabilitation of Defendant as to these collateral matters, resulting in a danger of confusing the issues. For these reasons, the court finds that the probative value of evidence of Defendant's insurance fraud is substantially outweighed by the danger of confusing the issues under Rule 403. Accordingly, the court shall grant the Defense Motion to the extent it seeks to exclude evidence of Defendant's alleged acts of arson and insurance fraud for purposes of impeachment.

### 3. *Testimony of insurance company employee*

Defendant argues that the court should exclude certain testimony that it anticipates will be introduced by an employee of the Nationwide Insurance Company listed as a prospective government witness. Defense Motion III at 1. At the final pretrial conference on January 6, 2016, the court denied the Defense Motion III, indicating that it would revisit the issue upon a proper objection by Defendant after the context of the witness's testimony takes shape. The court notes, however, that in the government's list of prospective witnesses, it states that the witness will "testify concerning arson investigation and fraudulent claim submitted by . . . [D]efendant." *Id.* Provided that this anticipated testimony is consistent with the witness's testimony at trial, such evidence will be excluded pursuant to the court's ruling on the Rule 404(b) issues above.

### C. *Testimony of Ms. Mukakabanda*

Defendant argues that Antoinette Mukakabanda, Defendant's wife, should be barred from testifying at trial, claiming that her testimony is precluded by the marital privilege.

Defense Motion at 2 (citing Fed. R. Evid. 501; *State v. Allery*, 526 F.2d 1362 (8th Cir. 1975)). The government responds that it may call Ms. Mukakabanda "to testify concerning [D]efendant's family history and related matters." "Brief in Support of Government's Motion in Limine" ("Government Brief") (docket no. 62-1) at 18. The government argues that it does not intend to elicit testimony concerning confidential marital communications, and that Defendant therefore has no standing to raise privilege. *Id.* at 18-19. Defendant requested a hearing on the matter and, at the hearing, expressed concerns that Ms. Mukakabanda did not understand that she had the ability to raise the privilege. *See generally* Motion for Preliminary Ruling. The government responded that it was working with Ms. Mukakabanda through her attorney on this issue and that any concerns regarding whether her waiver of the privilege was knowing and voluntary could be addressed at a later time. The government maintained, however, that Defendant lacked standing to object to Ms. Mukakabanda's testimony.

The court agrees with the government. There are two distinct types of marital privilege: the confidential marital communications privilege and adverse spousal testimonial privilege. *See United States v. Espino*, 317 F.3d 788, 795 (8th Cir. 2003). "The marital confidential communications privilege prohibits testimony regarding private intra-spousal communications." *United States v. Evans*, 966 F.2d 398, 401 (8th Cir. 1992). In order to invoke such a privilege, the communication must meet three requirements: (1) "the privilege extends only to words or acts that are intended as a communication;" (2) the communication must have occurred during a valid marriage; and (3) the communication must be made in confidence. *Id.* However, "[o]nce these three prerequisites are met, a defendant may invoke the privilege to prevent his spouse from testifying as to the content of the protected communication." *Id.* On the other hand, "[u]nder the adverse spousal testimony privilege, an individual 'may neither be compelled to testify nor foreclosed from testifying' against the person to whom he or she is married

at the time of trial." *Espino*, 317 F.3d at 796 (quoting *United States v. Bad Wound*, 203 F.3d 1072, 1075 (8th Cir. 2000)). "The privilege, therefore, rests with the testifying spouse who may waive the privilege without consent of the defendant spouse." *Id.* The government has indicated that it does not seek to elicit confidential marital communications, but rather to call Ms. Mukakabanda to testify as to general biographical information. Therefore, Defendant may not prevent Ms. Mukakabanda from testifying, as the privilege is hers alone to invoke. Because the government is working with Ms. Mukakabanda through counsel, the court finds that any discussion concerning waiver of her privilege can be addressed by Ms. Mukakabanda's counsel as opposed to the court. Accordingly, the Government Motion shall be granted, the Defense Motion shall be denied and the Motion for Preliminary Ruling shall be denied with respect to Ms. Mukakabanda's testimony. However, the government may not elicit testimony regarding confidential marital communications between Defendant and Ms. Mukakabanda.

### D. A-Files

The government argues that the court should find admissible "documents from the alien files ('A-files') of . . . [D]efendant and his family." Government Brief at 9. The government does not identify with particularity which documents in the A-Files it seeks to admit, but it states that the "documents largely contain biographical information" about Defendant and his family and were compiled by government officials from information Defendant provided during the multistage process of gaining refugee status and naturalization. *Id.* The government seeks admission of these documents as exceptions to the rule against hearsay. *Id.* at 10-12. More specifically, the government argues that the documents are records of regularly conducted activity, as defined in Rule 803(6), and public records, as defined in Rule 803(8). *Id.*; *see also* Fed. R. Evid. 803(6), 803(8). The government further argues that insofar as the documents reflect statements made by

Defendant, they are admissible as non-hearsay opposing party's statements. *Id.* at 12; *see also* Fed. R. Evid. 801(d)(2).

Defendant "does not intend to object to admission of documents in his alien files as hearsay." Defense Response at 1. Further, the court agrees with the government that the documents, as described by the government, are excepted from the rule against hearsay. *See, e.g.*, *United States v. Torralba-Mendia*, 784 F.3d 652, 665 (9th Cir. 2015) (finding documents from an A-File admissible under Rule 803(8) because the documents were "filled out and kept by the Department of Homeland Security in its regular course of business" and were ministerial in nature, such that they did "not implicate the purposes animating the law enforcement exception" to Rule 803(8)); *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010) (holding "that immigration files contained in an A-File . . . constitute admissible hearsay, because the 'admission of routinely and mechanically kept [immigration records]'" comports with Rule 803(8) (quoting *United States v. Agustino-Hernandez*, 14 F.3d 42, 43 (11th Cir. 1994))); *United States v. Farah*, 475 Fed. App'x 1, 8-9 (4th Cir. 2007) (finding A-File documents admissible under Rule 803(6)). The court notes, however, that admissibility of documents from an A-File may be contingent on the particular nature of those documents. *Cf. United States v. Urqhart*, 469 F.3d 745, 747 (8th Cir. 2006) (individually analyzing the admissibility of a Certificate of Nonexistence of Record, which was contained within the defendant's A-File); *see also, e.g.*, *Torralba-Mendia*, 784 F.3d at 664-65 (comparing the particular A-File document at issue to other A-File documents addressed in prior cases); *Caraballo*, 595 F.3d at 1226 (addressing "the portion" of the A-File introduced as evidence, finding it "contained *only* routine biographical information" that was compiled routinely as part of agents' "non-adversarial duties"); *Farah*, 475 Fed. App'x at 8 (identifying the particular A-File documents at issue as "applications for asylum, lawful permanent residence, and naturalization").

Accordingly, the court shall grant the Government Motion to the extent it seeks to admit the "largely biographical information" that the government refers to in the Government Brief and to the extent it seeks to admit application documents completed by Defendant to gain refugee and permanent resident status and to be naturalized as a citizen. However, the court shall reserve ruling on the Government Motion insofar as it seeks to admit other documents contained in the A-Files.

## E. Self-Serving Statements

The government argues that the court should exclude any of Defendant's "out-of-court self-serving statements" as hearsay under Rule 801. Government Brief at 12. In particular, the government is concerned that Defendant may attempt to introduce his out-of-court statements "concerning the conditions of his flight from Rwanda; his language skills or lack thereof; the 'true' meaning of his statements to officials concerning his relationship to Faustin Twagiramungu; or other matters presently unknown to or anticipated by [the] government." *Id.* at 14. The government contends that any such statements constitute inadmissible hearsay and therefore should be excluded. Defendant states that he is "not aware of any self-serving hearsay statements that he would wish to introduce through other witnesses." "Brief in Support of Defendant's Response to Government's Motion in Limine" ("Defense Response Brief") (docket no. 64-1) at 1. Insofar as the government refers to certain statements Defendant made to ICE agents on October 15, 2014, Defendant argues that such statements form "the basis of the allegation in Count 4 of the indictment that [Defendant] made false statements to a government official" and, thus, Defendant should be able to discuss those same statements. Defense Response at 1. Defendant also argues that he should be able to introduce evidence from third-party witnesses regarding their observations of his language skills because "[o]bservations are not hearsay." Defense Response Brief at 1 (citing *United States v. Tenerelli*, 614 F.3d 764, 771 (8th Cir. 2010)).

Hearsay is a statement made out-of-court that is offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). A statement that is offered against an opposing party is not considered hearsay under the Federal Rules of Evidence. Fed. R. Evid. 801(d)(2); *see also Old Chief v. United States*, 519 U.S. 172, 186 (1997) ("[A] defendant's admission is, of course, good evidence."). However, this non-hearsay rule does not extend to a party's attempt to introduce his own out-of-court statements in his own favor. *See United States v. Waters*, 194 F.3d 926, 931 (8th Cir. 1999) (holding that, when a defendant offers exculpatory out-of-court statements for their truth, "'[s]uch statements . . . are hearsay'" (quoting *United States v. Greene*, 995 F.2d 793, 798 (8th Cir. 1993)); *see also United States v. Palow*, 777 F.2d 52, 56 (1st Cir. 1985) ("The requirement of Rule 801(d)(2)(A) that an admission be offered against a party is designed to exclude the introduction of self-serving statements by the party making them."). In such a case, the statement would be hearsay, depending on the purpose for which it is offered. However, even if such a statement is hearsay, it is not invariably kept out of evidence. Such a statement may be admissible under a hearsay exception. *Cf.* Fed. R. Evid. 802 (providing that even hearsay statements are admissible if provided for by the Federal Rules of Evidence); *see also United States v. Esparza*, 291 F.3d 1052, 1054-55 (8th Cir. 2002) (declining to allow a defendant to admit a self-serving hearsay statement made at the time of his arrest because it did not fit within any hearsay exception). Here, the government has not stated with particularity the statements that it seeks to exclude. Therefore, the court cannot determine whether the challenged statements fall within any hearsay exception. Accordingly, the court shall reserve ruling on the Government Motion to the extent it seeks to exclude any of Defendant's "out-of-court self-serving statements."

### F. Expert Testimony

The government requests that the court allow "the government to offer expert testimony on matters of Rwandan history and culture likely unfamiliar to the jury." Government Motion at 1. The subject matter of such testimony will include:

> the history of Rwanda preceding the genocide; the naming conventions for surnames in Rwanda; the political conditions in Rwanda and the region prior to the genocide; the downing of President Habyarimana's plane and the immediately subsequent events; the political, economic, social, and security conditions in the country after the events of April 6, 1994; the flight of refugees from Rwanda; and other matters relating to life in Rwanda and the refugee crisis brought on by the Rwandan genocide.

Government Brief at 15. Furthermore, witnesses will testify "concerning the establishment and administration of the United States Refugee Resettlement Program (UNHRCR); the Joint Voluntary Agency (JVA); and the United States Refugee Resettlement Program for Rwandan refugees." *Id.* The government argues that such testimony "will assist the jury in understanding the evidence by providing background concerning the genocide in Rwanda and the resulting refugee crisis. This evidence is necessary to place the refugee crisis in context and to provide additional context to the efforts to screen or triage the refugee applicants." *Id.* at 16.

Defendant states that he does not object to such testimony, insofar as "the subject of expert testimony . . . at trial is consistent with information in . . . the government's brief . . . under the caption 'Relevant Rwanda History.'" Defense Response at 2. Defendant does not address the government's intention to elicit testimony regarding the establishment and administration of various refugee programs, which does not fall under the caption "Relevant Rwanda History." However, the court finds no basis for excluding this additional strand of testimony regarding the refugee programs. Accordingly, the court shall grant the Government Motion to the extent it seeks to admit expert testimony on

matters of Rwandan history and culture, as well as the establishment and administration of refugee programs.

### G. Authentication of Foreign Military Records

The government requests that the court find that "foreign records of [D]efendant's brother's status in the military are self-authenticating." Government Motion at 1. The government states that "Defendant falsely denied during the refugee process having any relatives in the military," arguing that this was important "because members of the military had been implicated in committing acts of genocide" and knowledge of such fact would have warranted increased scrutiny of Defendant's application for refugee status. Government Brief at 16-17. The government states that Defendant's brother was in fact convicted of genocide and sentenced to life imprisonment. The government argues that Defendant's brother's military records are self-authenticating under Federal Rule of Evidence 902(3), which provides that:

> A document that purports to be signed or attested by a person who is authorized by a foreign country's law to do so [is self-authenticating]. The document must be accompanied by a final certification that certifies the genuineness of the signature and official position of the signer or attester—or of any foreign official whose certificate of genuineness relates to the signature or attestation or is in a chain of certificates of genuineness relating to the signature or attestation. The certification may be made by a secretary of a United States embassy or legation; by a consul general, vice consul, or consular agent of the United States; or by a diplomatic or consular official of the foreign country assigned or accredited to the United States. If all parties have been given a reasonable opportunity to investigate the document's authenticity and accuracy, the court may, for good cause, either:
>
> > (A) order that it be treated as presumptively authentic without final certification; or
> >
> > (B) allow it to be evidenced by an attested summary with or without final certification.

Fed. R. Evid. 902(3). Defendant states that, "[o]n its face, the certification appears to satisfy the requirements of [Rule] 902(3)." Defense Response Brief at 2. However, Defendant argues that the documents may constitute inadmissible hearsay. Additionally, Defendant argues that evidence regarding trial proceedings against Defendant's brother violates the agreement reached by the parties "by suggesting that [Defendant] at least was involved indirectly in the genocide by his association with his brother." *Id.* at 3.

With respect to Rule 902(3), the court finds that such documents are self-authenticating. It appears that each party has had an opportunity to investigate the document's authenticity and accuracy. As to the ultimate admissibility of such evidence, the court concludes that Defendant's brother's military activities have no bearing on Defendant's own activities and, therefore, the evidence is not excludable on the basis of the parties' prior agreement regarding case-in-chief evidence by the government of Defendant's participation in genocide. However, the court reserves ruling on the admissibility of the evidence on other grounds.

## H. Reliability of Interpreters

The government argues that the court should exclude evidence that the interpretation services provided at the Mkugwa refugee camp for refugee application interviews were generally unreliable. Government Brief at 19-21. The government claims that, because Defendant has not linked the unreliability of the interpretation to any particular statement that he made during the refugee application process, testimony from other refugees who used interpreters at the Mkugwa camp leads to impermissible speculation that Defendant had similar experiences. *Id.* at 20. The government contends that the probative value of any such testimony from other refugees would be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues . . . [or] misleading the jury." *Id.* (quoting Fed. R. Evid. 403) (alterations in original). Defendant argues that testimony of other refugees that went through the same process as Defendant will reveal, among other things,

that interpretation in Defendant's native language of Kinyarwanda was unavailable. *See* Defense Response Brief at 4. Defendant argues that such evidence is pivotal because his intention to make false statements is the central issue in the case and evidence that the interpretation services were unreliable undermines the conclusion that Defendant intentionally communicated the untrue statements recorded by the interviewers. *Id.* Defendant lastly argues that evidence that other refugees corroborate the interpretation issues during the refugee application process is highly probative to rebutting the government's attacks on Defendant's credibility. *Id.* at 4-5.

From the information provided by Defendant in the form of investigator interviews of individuals who were at the Mkugwa camp, the court is unable to determine what the likely testimony of these individuals would be as it relates to the Mkugwa camp's interpreters, and, thus, the court cannot determine if their testimony would be relevant and competent on the issues for which Defendant plans to call them. Defendant may not offer such evidence until he makes an offer of proof outside the presence of the jury. Accordingly, the court shall reserve ruling on the Government Motion to the extent it seeks exclusion of evidence that interpretation services available to Defendant during the refugee application process were generally unreliable.

## I. Potential Punishment

The government argues that "Defendant should be forbidden from eliciting any evidence or otherwise mentioning to the jury the potential punishment or immigration consequences he or his family may face if [D]efendant is convicted of any or all of the crimes charged in the Indictment." Government Brief at 21. Defendant does not object to the government's request and states that he has no intention of eliciting such evidence. However, Defendant states that, "[i]f, however, the government calls as a witness an individual who admits committing the same offense for which [Defendant] is charged, [Defendant] reserves the right to question the witness concerning the consequences that he

or she is avoiding as a result of his or her cooperation with the government." Defense Response at 2-3. Accordingly, the court shall grant the Government Motion to the extent it requests that the court exclude evidence regarding potential punishment or immigration consequences that he or his family may face if Defendant is convicted.

### J. Sympathy and Jury Nullification

The government requests that the court prevent Defendant "from presenting any evidence of any purported difficulties or hardships he or his family endured as a result of having fled Rwanda. Such evidence has no bearing upon the issues in this case and could only be intended to garner sympathy or prejudice with the jury." Government Brief at 22. Additionally, the government requests that the court prevent Defendant "from seeking to compare his situation to that of other refugees in history or to refugees involved in current world events." *Id.* at 23.

Defendant states that he "has no intention of inviting jury nullification, sympathy, passion or prejudice from the jury." Defense Response at 3. However, the Defendant points out that the government "plans to call an expert witness to testify, among other things, about 'the political, economic, social, and security conditions in the country after the events of April 6, 1994; the flight of refugees from Rwanda; and other matters relating to life in Rwanda and the refugee crisis brought on by the Rwandan genocide." *Id.* Defendant argues that "[t]he conditions in which [Defendant] was living are directly relevant to his theory of defense, that being that the totality of circumstances rendered accurate communication between agency personnel and refugees such as [Defendant] virtually impossible." *Id.* Defendant also states that he has no intention of comparing his situation to that of other refugees throughout history or in the present day, aside from questions involved in jury selection.

To the extent the government seeks to prevent Defendant from engaging in jury nullification, the court shall grant the Government Motion. However, insofar as the

government's request encompasses information directly relevant to Defendant's theory of defense, the court reserves ruling on the admissibility of such information.

## *K. Justification Defenses*

The government requests that the court "preclude [D]efendant from arguing or presenting any argument or evidence to suggest that he was under duress or coerced when he lied to gain refugee and other immigration benefits; that he believed it was necessary to lie; or that he was justified in lying, to escape Rwanda and give his family a better life in the United States." Government Brief at 24. Defendant states that he "is not claiming that any of his actions were the result of duress, coercion, necessity or justification." Defense Response at 3. Accordingly, the court shall grant the Government Motion to the extent it requests that the court bar Defendant from presenting evidence or argument of duress, coercion, necessity or justification.

## *V. CONCLUSION*

In light of the foregoing, it is hereby **ORDERED**:

(1)     The Defense Motion (docket no. 54) is **GRANTED IN PART** and **DENIED IN PART**.

(2)     The Defense Motion II (docket no. 57) is **GRANTED**.

(3)     The Defense Motion III (docket no. 93) is **DENIED**.

(4)     The Motion for Preliminary Ruling (docket no. 65) is **DENIED**.

(5)     The Government Motion (docket no. 62) is **GRANTED IN PART** and the court **RESERVES RULING IN PART**.

Each party is charged with the responsibility of cautioning its witnesses as to the substance of this Order. If during the presentation of evidence a party believes that a prohibited subject has become relevant or that the necessary predicates for admission have been established, the party may request an opportunity to argue for admissibility of the

evidence outside the presence of the jury. Each ruling in this order is binding on both parties.

**DATED** this 10th day of January, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA